Good morning, Mr. Wishmer. Good morning. May it please the Court, my name is Stephen Wickmer and I represent the petitioner Felix Somoza-Garcia in this petition for review of the March 29, 2013 decision of the Board of Immigration Appeals. We are here today to respectfully request that the Court vacate the Board's decision denying Mr. Somoza withholding, as well as relief under the Convention Against Torture, and request that the Court grant Mr. Somoza either withholding of removal or relief under the Convention Against Torture. You don't have to speak in that way. Oh, sorry. Is this better? Well, yes, it is. Okay. And we, in the alternative, request that the Court remand to the Board for further proceedings on the applications in the alternative. Remand for what issue? Well, we think that remand is not necessary, that the Board's decision was unreasonable and that this Court can grant... What part of the Board is unreasonable? Well, we think the Board erred in three main ways. One, it denied Mr. Somoza's application for withholding of removal based on its finding that there was no nexus between the harm he suffered and his political opinion. Two, we believe the Board erred in denying withholding of removal based on an erroneous finding that there was no nexus between the harm he suffered and his membership in a particular social group. And finally, we believe the Board erred in denying relief under the Convention Against Torture based on its holding that it was unlikely Mr. Somoza would face torture with the acquiescence of a government official in Guatemala. And I'll address each of those in turn. Just briefly on the requirements, what is Mr. Somoza required to show to win? To get withholding of removal, he has to show that it is more likely than not that his life or freedom will be threatened in Guatemala based on a ground protected under the Act. It is important to note that here, the immigration judge and by the Board's adopting that part of the IJ's decision or not contesting it, the IJ agreed that he was harmed severe enough to equal persecution under the Act. And that's at the appendix, page 60. The Board denied relief based only on a finding of a lack of nexus between a protected ground and the harm he suffered. Just briefly, Mr. Somoza was persecuted by a group that the government in Guatemala is unable or unwilling to control, namely Mara Salvatrucha, or MS-13, which is a transnational criminal organization that has strong ties in Guatemala. He was beaten severely on two occasions in an extortion attempt to recruit him into the gang. And then after that second incident, he reported the incident to the police. The police called him back to the station. And at the station, he identified the local leader of MS-13, a man named Arturo, to the police in front of Arturo. And we believe that that act right there is what makes him, Mr. Somoza, protectable under the Act. Well, we've got the problem of such a general group, which as I understand it is young Guatemalan males who have opposed the gangs. Well, that's not much of a social group. That's everybody. Correct, that would not be. But the way the social group is defined, we believe it is cognizable under the Act. But putting aside that social group for a second, we also believe that Mr. Somoza's act was an expression of his political opinion. And that's the first argument as to why there's a nexus. How is opposing gang violence a political opinion? There are many cases in this circuit and before the board that say it isn't, but no case like this one. It's useful to think about MS-13 as a group. This is not a normal gang like we would have a gang in the United States, like the Crips or the Bloods, that causes crime. This is a transnational criminal organization that threatens the legitimacy of the Guatemalan government itself. It is inherently political. The record is replete starting from 3-21 on that this gang, this transnational criminal organization, has formal political structure and ties to the formal political structure in Guatemala. It is an existential threat to the state. Quotes from the record from the State Department report and also from reports from the Army War College say that basically because of the strength of these transnational organizations, of which MS-13 is the strongest, it has discredited the Guatemalan state and deprived it of legitimacy and authority. Is there anything in the record to show that your client was somehow a member of a political group before his troubles with Arturo? No. That's the distinction here. I know it seems foreign to our entire way of life, but if you could look at it from the perspective of someone in Guatemala. Think about it. Forget the name MS-13 in Guatemala. Say that someone was living in Afghanistan and they were brutalized by the local leader of Al-Qaeda there. Then they reported that incident to the police, identified the leader of the local Al-Qaeda cell, and then were subsequently brutalized further and had to flee the country. Is there any doubt that that is an expression of a political opinion? I don't think so because what is a political opinion? I don't want to go dictionary on you. To me, it's more of he was a victim of a crime and he reported the crime. How is that a political opinion? I think that there's two reasons that differentiate this case from the average case. One is that the inherent nature of the group he is opposing entails a political opinion by opposing them. You are expressing support for the legitimate government in Guatemala, the democratic state, against a group that is opposing it. Therefore, you are expressing a political opinion. By reporting a crime. By identifying the leader of the local. Which is part of reporting a crime. Well, I guess that's the issue, Your Honor. But I believe it is the expression of a political opinion because if you are taking a stance, and in the record it says that he personally is opposed to MS-13 and supports the government of Guatemala. If you take a stand against a group opposing the government, why isn't it a political opinion? I would say I think that's too narrow of a definition of a political opinion. I don't think you have to be a member of the anti-MS-13 party and have a rally against them to have a political opinion supporting the legitimate government. It would help your case. Sure. I can't make that up. I'll give you an example from the Eighth Circuit. The case that the government cites in its brief we cite in our brief, we believe it supports our case of Marroquin v. Holder. In there the court, the Eighth Circuit, said that opposition to a gang such as Mara Salvatrucha may have a political dimension. But refusal to join the gang by itself is not enough. That kind of raises the question, what is enough? I think that what is enough is taking overt public action in support of the legitimate government against MS-13. Is reporting a crime a public action? How do we look at the idea of a public act in this context? Correct. I don't think you should look at this case as standing for what you have to do in every gang case or every time someone files a police report. This unique circumstance, and that's what Marroquin says also, is that you have to look at the particular circumstance in detail. Here, he didn't just file a police report and go back to his house. He went down after being called back to identify the leader of this gang to the police in front of the leader and the police. And that's what distinguishes it. But again, to Judge Bright's point earlier, even if he wasn't expressing a political opinion, we believe that the social group as defined is sufficient to withstand scrutiny under the act. I'm sure you're all familiar with from the materials that just resisting a gang or just being persecuted or, excuse me, harmed by a gang is not sufficient to get withholding of removal. We all agree with that. The cases are plentiful. Constanza here in the Eighth Circuit is the main one. There's a matter of CA before the board. But in this case, the way the social group is defined, I believe, is sufficiently visible and particularized to differentiate it from those cases. The social group as defined by counsel below is as follows. Young Guatemalan males who have opposed MS-13 have been beaten and extorted by MS-13 and reported gang members to the police, only to face increased persecution as a result. Admittedly, that's a very dense and verbose way of putting it. In an attempt to make it particularized and visible, but we believe it does pass the test. Again- I would like to say that you've got a high, you know, with the case law. I have to tell you that it's so broad, your political opinion. But I think you ought to vote a little time in the convention against torture. Sure. Where is your client? Is he still in this country? Yes, he is, Your Honor. I think you ought to vote some time in the convention. Sure, and I plan to, and I will move on now if that's acceptable to the court. So, right, convention against torture. Regardless of whether there's a nexus under the act, whether this case is distinguishable, Mr. Somoza merits relief under the convention against torture. No nexus is required. All that's required is that you prove the level of harm he's likely to face is torture. And that's defined as a severe form of persecution, which he already suffered, being beaten, life-threatened, cut, ribbed, broken. That all qualifies. The problem here, of course, is will it occur with the acquiescence of the local government in Guatemala? And we argue that it will. Acquiescence is defined in the regs is that it requires awareness of the act of torture and a breach of a responsibility to intervene as a minimum. The main Eighth Circuit case on point, we believe, is Ramirez-Pero, which concerned Mexico, but it's the same basic principle. Here in Guatemala, and you can see this from the State Department report, corruption isn't just normal. It is what happens. It is abnormal not to have corrupt local officials and even all the way up to national officials. Police routinely brutalize people, rape, kidnap, et cetera. In 2010 alone, there were 787 investigations of police officers, and it notes in the State Department report that 439 of those were exonerated. Well, that means at least 350 weren't. The point being that all it takes under Ramirez-Pero is for one local officer to know what's going on with the MS-13 who has infiltrated all levels of government in Guatemala and looked the other way. If they are aware of the acts of their members in local law enforcement and they turn a blind eye, that is acquiescence. We believe not only is that likely, but that that's actually what already happened to Mr. Somoza. If you say he's reporting a crime... You're not telling me that it's sufficient that one officer was bribed or would go along with MS-13. Absolutely. Under Ramirez-Pero... I thought there was evidence that the government, generally speaking, tried to control the games. Right. There's two things. The government generally... An attempt by the government to control some people who do torture is not enough. The torturer doesn't have to be executing state policy. It can be doing the exact opposite of state policy. That's what Ramirez-Pero says. But all it takes is one local law enforcement officer acting under color of law to torture. That's torture. And it doesn't have to be him doing the torture. It just has to be him acquiescing in the torture. We believe, again, that here, that's what happened to Mr. Somoza. He reported a crime. He sought protection in local law enforcement. He identified the perpetrator to the perpetrator to local law enforcement. And then what happened? Two days, three days later, they let him go and he's brutalized again, forcing him to flee to the United States. That is exactly what Ramirez-Pero says is not allowed and what is worthy of protection in the Convention Against Torture. So we ask that even if you don't buy the nexus for withholding of removal, he certainly merits withholding under the Convention Against Torture. I see that I would like to reserve some time for rebuttal if there's no questions. Is your client, is he out or is he incarcerated at this time? No, currently he's in the United States. He's out. Okay. Thank you. Good morning. May it please the Court. Allison Frayer for the Attorney General. The Board in this case reasonably denied Mr. Somoza's applications for withholding as well as for cat protection. He did not establish that there was a nexus between the past harm and his political opinion or his membership in a legally cognizable social group. This Court seems particularly interested in the cat application, so I'll move there if there are no questions on withholding. Okay. So for cat, Mr. Somoza needs to demonstrate that it is more likely than not that there is a clear probability that he will be tortured upon return with the acquiescence of the Guatemalan authorities. Mr. Wickmer is right. It does not need to be national policy to torture Mr. Somoza, but he does need to establish that the local law enforcement would have awareness of what was going to happen to him and then that they would breach their legal duty to stop it. He relies most... I was going to ask, what does the State Department say about the business of torture going on now in Laos and Guatemala? The State Department report does not focus on the region from which Mr. Somoza hails. It deals mostly with the entire country of Guatemala and with some problems in some other departments. It doesn't mention Mr. Somoza's region specifically. But that report tells us that torture is common in Guatemalan prisons and that most of the torture that is reported occurs during anti-gang operations. So a Guatemalan police officer... Anti-gang operations? Yeah, so a gang... According to the State Department report, the most typical instance would be, for example, a Guatemalan police officer comes across somebody he thinks is in a gang and then he mistreats that gang member severely or arrests him without a warrant or that kind of a thing. Are we talking MS-13 when we say gang? There are many others, but MS-13 is the strongest and most prevalent, so largely yes. Doesn't that anti-gang activity and torture kind of go along? And this guy got a background of anti-gang activity and he reported on them and they arrested this guy, he got out, and the torture continued until he got out of the country. Doesn't he make a reasonable case for relief? He may make a reasonable case for relief, but he hasn't demonstrated that the record compels that conclusion. It's possible the board could have come to either conclusion on this record, but that's not sufficient for the petition for review to be granted. The board's decision was reasonable and supported by the evidence, and that's the end of this court's review. Although Mr. Somoza believes that corruption played a role in Arturo's release, it's not clear that that's what happened. The evidence in the record demonstrates that the Guatemalan police lack the resources to prosecute crimes sufficiently, so they often are forced to let suspects go for lack of evidence or for failure to meet certain legal deadlines for charging people, for bringing them before judges, that kind of a thing. So it's not clear that corruption did play a role in Arturo's release. It may simply have been incompetence, and incompetence is not sufficient to demonstrate acquiescence. This court has held that multiple times. Additionally, even if corruption did play a role, which is unfortunately not out of the question in Guatemala, that single event is insufficient to demonstrate that more than ten years later, there's a probability that the same sequence of events will repeat itself. The actions of one officer could be enough, but it's not clear if the same police officers are there. We have no evidence in the record of the local police officers' current attitude towards the gangs or their current competence in fighting the gangs. We just have that one single event, which is insufficient to compel the conclusion that there's a probability it will happen again. This is essentially a burden of proof case. The board could have possibly come to either conclusion, but the record doesn't compel the conclusion Mr. Somoza seeks. I don't know how you draw that. What's compelled is when he shows that it happened. Conditions have not improved so far as I'm aware of in Guatemala that much. It seems to me that for the board to say, well, it's not compelled. I don't know what else. It seems to me there's a conclusion from the evidence that he's going to be tortured. If that were the case, then the court would need to remand to the board for proceedings consistent with any opinion here. Contrary to Mr. Wickmer's suggestions, this court cannot grant the application in the first instance. If the court were to conclude that the record compels the conclusion that the single event ten years ago were sufficient to demonstrate a probability of acquiescence, then the court would need to remand and ask the board to issue another decision. Is there any evidence in the record that the government tries to control the gangs? There's a lot of evidence actually in the record that the government, especially the national government, is attempting to control the gangs with some success. Certainly not great success, but with some success. They have instituted UN help as well as United States help in anti-gang and anti-drug trafficking efforts, and they have been working hard against this. So it's clear that the national government of Guatemala does not acquiesce in the gangs' activities, does not accept the gangs, and that the government of Guatemala continues to operate independently of the gangs. So it's not a failed state. There are some suggestions in Petitioner's brief that Guatemala is a failed state to the extent that everything they do is because of the gangs, but that's not supported by the record. They continue to operate independently. Is it sufficient that one local officer, if there was proof that one local officer was corrupt, is that sufficient to show government acquiescence? I don't believe this court has decided that issue. Ramirez-Pero dealt with the instances in which a police officer directly harms someone, so like a lynching where a police officer is involved, or a police officer delivers a man to a mob. So it was dealing with state actors. And Mr. Somoza has never claimed to fear harm directly from the police. Ramirez-Pero said that the board did not, in that case, did not sufficiently look into the question of acquiescence by a third-party actor, by a non-state actor, and so it remanded for that question. So Ramirez-Pero did not answer whether it would be sufficient for one police officer to acquiesce or to turn a blind eye to the gangs' actions, which is what's now before this court. But Ramirez-Pero did not answer that question. So I would assume the government's position is that that's not sufficient. No, correct. The single officer – I mean, Ramirez-Pero also mentioned that a rogue police officer would not confer eligibility for CAT, basically, that if there's just one police officer who's off on his own, doing his own thing, and the rest of the government does not accept that and, in fact, would prosecute this police officer if they found out about his actions, then that's not enough for CAT. And the record demonstrates that the Guatemalan authorities do not accept gang activity, and although they're not completely successful, they do have anti-corruption drives. There's mentions in the State Department reports of prime ministers and presidents and other national leaders being arrested, indicted, run out of the country because of their corruption. So it seems obvious that the Guatemalan government, to the extent that it can, is attempting to root out corruption. So even if Arturo was released as a result of one police officer's corruption, that rogue officer's actions would not be enough to confer the veneer of state action, particularly where the record demonstrates that if his actions were discovered, the rest of the Guatemalan state would prosecute and jail him if they could. Was the State Department reports introduced in evidence? Yes, Your Honor. So the board had those? Yes, Your Honor. And they're in the record we have? Yes. Thank you. You're welcome. Mr. Wickmer mentioned that he equated MS-13 with al-Qaeda for purposes of political opinion, and I just wanted to respond that although their power might be similar, the reasons they act are different, and for withholding of removal the statute makes motive critical, and therefore that's a critical distinction. Al-Qaeda has an economic, political, and religious agenda that MS-13 simply doesn't. They're very powerful, but they're still just a criminal organization that seeks only to extend their own wealth and power. The counsel said it was also sort of anti-traditional government. Doesn't that give it sort of a layer of political action or politics? Not particularly because the record shows that they'd be against anyone in their way. It could be traditional government. It could be, I mean, just anybody in their way. So they're against people getting in their way, but they're not against the government in particular. It's different from the Civil War, say, of the 1980s and 90s, where they were against that government because they had a different political view. The guerrillas were Marxist and the government was conservative or something like that. The gangs would be against anyone who stood in their way, so changing the government would not make a difference. The record also demonstrates that MS-13 does not seek formal political power. They don't want to be in charge. They prefer a weak government, surely, because that makes their jobs of earning a lot of money easier, but they don't seek to be in charge of Guatemala in a formal political way. And if the Court has no more questions. Very well. Thank you. Thank you. Just very briefly, as far as the political aspirations of MS-13, I think that it's clear from the record they do have political ties, and more importantly, this Court has said that opposing it may have a political dimension. So, putting that to the side, back to relief under the Convention against Torture. The national government doesn't have to acquiesce in torture, and counsel made the fair point that one rogue officer, like in the United States, that tortures a suspect. That's not what we're talking about here. Here, it would be rogue if the officer in Guatemala actually did their job correctly and was not corrupt. This is a situation just like in Ramirez-Peyro, when it is rife with corruption, the government is aware of it, and the Court said in that case... But that case isn't an acquiescence case. It's a direct government action case. There is no direct acquiescence case in this circuit, but that is the closest. And when counsel said that it doesn't decide this case true, but it does, I think, answer it with the language in that case. It says, in that case, it appears that the police abuses at the local and state level may be characterized as routine, and the government's general knowledge of the activity may distinguish the present case from that where a government is merely unable to control third-party torturers despite repeated attempts. That is not Guatemala. Guatemala, it's not a rogue officer. It is the police force in Guatemala, and them turning a blind eye like they did. I think it's clear from the record, Mr. Somoza was found credible. There is no other evidence on the record as to the motivation of the police in letting someone who brutalized Mr. Somoza go two days later. That's why he was let go, because of the power of MS-13 and the blind eye of local police. As I see it, you've got one, you've got your client, turns a gang member in, and this one gang member is released after a week. We don't know why or how or anything like it. There's got to be something in the record that says corruption of the police department in Guatemala is general, and I don't know that it is. I believe if you look at the record at 320 and subsequent, the Army War College report, the State Department report, it is general. As far as that one incident, we have Mr. Somoza's credible testimony, and what else do you look at in determining whether it's likely he'll be tortured? Evidence of flagrant violations and past. That's all you have to go on. You don't have to decide it's 100%, but ask yourself, really, do you think he will suffer similarly as he did? I think the answer is clearly yes, and therefore he merits relief under the convention against torture. What page in the appendix? It starts at about 321. There's the State Department report, and then after that there's two reports, I believe, from the Army War College, and I believe they're directly on point. If there are no further questions, thank you. Thank you, Mr. Wickmer. Thank you, counsel. We appreciate your arguments. The case will be submitted.